**FILED**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA   JUL 1 9 2007

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

| | | |
|---|---|---|
| SHAFT DRILLERS INTERNATIONAL, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | No.   1:07cv 100 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ROCK WELL PETROLEUM, INC., | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Shaft Drillers International, LLC, files this Complaint for Declaratory Relief against Defendant Rock Well Petroleum, Inc., alleging as follows:

### INTRODUCTION

1.     Shaft Drillers International, LLC, (hereinafter referred to as "SDI") brings this action against Rock Well Petroleum, Inc. (hereinafter referred to as "RWP") based on RWP's breach of the duty of good faith and fair dealing expressed in the parties' Letter of Intent and Framework and imposed by law.  Specifically, RWP failed to act in good faith to negotiate a mutually agreeable Unit Cost and Form of Construction Contract based on SDI's work at RWP's Greybull, Wyoming site.  RWP's unlawful decision to hire a third party to perform the work at Greybull prevented SDI from formulating an accurate rate sheet for the proposed Contract, thereby directly causing the parties to fail to execute a mutually agreeable Contract.  RWP also acted in bad faith by attempting to compel SDI to sign an unsuitable non-compete/confidentiality agreement that would effectively prevent SDI from working with competing companies in the industry and in its unreasonable termination of negotiations with SDI.

2.      SDI, therefore, seeks a declaration from the Court (i) that SDI acted in good faith to fulfill its obligations under the Letter of Intent; (ii) that RWP breached Letter of Intent by acting in bad faith; and (iii) that RWP's bad faith actions render the Limitation of Remedies provision of the Letter of Intent inapplicable, allowing SDI to recover damages for RWP's breach.

## PARTIES

3.      SDI is a Pennsylvania limited liability company with its principal place of business located at 63 Gum Springs Road, Morgantown, Monongalia County, West Virginia.

4.      RWP is a Delaware corporation with its principal place of business at 122 North Main Street, Sheridan, Wyoming.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that this is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (c) because the events giving rise to this action, or a substantial part thereof, occurred Morgantown, Monongalia County, West Virginia and Defendant RWP is subject to personal jurisdiction in the Northern District of West Virginia and, therefore, resides therein.

## FACTUAL BACKGROUND

7.      SDI is an established large diameter shaft development firm that provides its services to drilling and mining projects throughout the United States and the world.

8.      RWP is engaged in the business of petroleum extraction.

9.      Before March of 2006, SDI and RWP began negotiating a Letter of Intent that would allow both companies to further their business purposes by working together on various projects.

10.     All negotiations relating to the Letter of Intent took place via electronic mail with SDI sending and receiving email at its offices in Morgantown, Monongalia County, West Virginia.

11.     In March of 2006, SDI and RWP entered into a Letter of Intent & Framework (hereinafter referred to as "LOI") in which the parties agreed to use "diligent efforts" and to "negotiate in good faith" to create a mutually agreeable Unit Cost and Form of Construction Contract ("Contract") governing the services SDI would provide to RWP's drilling project at the Poison Spider Field site in Wyoming ("the Project").  A copy of the LOI is attached as Exhibit "A."

12.     Under paragraph 2 of the LOI, the unit rates of the proposed Contract were to be based on SDI's work commencing at Greybull, Wyoming site (hereinafter referred to as "Greybull") in the summer of 2006.

13.     In paragraph 3 of the Procedure section of the LOI, RWP committed to using SDI's services exclusively through 2010 on all shafts up to 12', such as that at Greybull. In turn, SDI committed certain assets exclusively to RWP for the same period of time, moving these assets from Australia to Wyoming.

14.      Paragraph 4 of the Procedure section required RWP and SDI to sign a "suitable" non-compete/confidentiality agreement to protect both parties' proprietary techniques and designs.

15.     The Limitations of Remedies provision in paragraph 2 of the LOI governs the result if the parties failed to reach a mutually agreeable Contract despite "diligent efforts and negotiation in good faith." See Exh. A. Under this provision (and provided that the parties acted in good faith), RWP was limited to a refund of "100% of any unapplied funds paid by RWP to SDI and 50% of the redeployment and staging costs actually incurred for each phase identified in item 1, but not to exceed 50% of the amount determined when multiplying the percentage of completion of a given phase times the total amount allocated to such phase."

16.     In paragraph 1 of the Procedure section, RWP committed to making payments to SDI in three phases of $400,000 in advance of each respective phase of the Project.

17.     RWP also agreed in paragraph 1 of the Procedure section to pay the difference between estimated and actual costs of any phase of the Project. See Exh. A ("if the actual cost for a respective phase is greater than the estimated cost, RWP will pay the difference").

18.     SDI executed the LOI at its offices in West Virginia on March 21, 2006.

19.     On April 4, 2006, RWP deposited $400,000 into SDI's bank account, thereby triggering the twelve-month period by which the two parties were to have arrived at a mutually agreeable construction Contract.

20.     Sometime after the signing of the LOI, SDI presented RWP with an estimate of the cost of services SDI would provide at Greybull.

21.     Despite the parties' agreement in the LOI that SDI would perform the work at Greybull and develop its rate sheet for the Project based on that work, RWP refused to allow SDI to carry out the work at Greybull.

22.     RWP instead hired alternative contractors who utilized a different mining method to complete the Greybull work.

4

23.   Upon information and belief, after RWP received SDI's estimate of its work at Greybull, RWP lost interest in ever forming a Contract with SDI and began planning its exit from its obligations under the LOI.

24.   RWP's decision to block from SDI access to the rate information that it would have developed during its work at Greybull and its diminishing interest in forming a Contract with SDI made it impossible for SDI to comply with its obligations under the LOI.

25.   SDI, for example, was unable to develop an accurate rate sheet proposal for the Project without the Greybull data.

26.   Even without this data, however, SDI attempted to comply with its obligations under the LOI.

27.   In September 2006, SDI furnished RWP with a draft of the proposed Contract for the Project that it formulated based on estimates from other standard projects it had completed, rather than the Greybull work as the LOI envisioned and required.

28.   Following SDI's initial proposal in September 2006, numerous events occurred that caused SDI to revise its estimate:

       (a.)   RWP altered the Project's scope from a single shaft to two shafts, resulting in a significant increase in the preparation, man hours, and equipment SDI would have to provide;

       (b.)   RWP informed SDI that the regional steel fabrication services supplier had begun to charge a premium for all new work due to a substantial increase in work load; and

       (c.)   Finally, RWP imposed an extremely tight deviation tolerance on the access shaft that forced SDI to modify its standard procedures.

29.   Shortly thereafter, SDI responded to RWP's alterations by revising its Contract proposal to more accurately reflect the Project's changing scope and the realities of the Wyoming steel market.

5

30.     All of these unforeseen and significant changes, none of which were in SDI's control, resulted in a price increase of approximately 30% that was reflected in SDI's revised proposal of December 2006.

31.     During the December negotiations, RWP also demanded that SDI sign a non-compete/confidentiality agreement limiting SDI's right to perform shaft development services for any of RWP's potential competitors.

32.     Through this non-compete/confidentiality agreement, RWP sought to leverage its own position at SDI's expense by controlling the businesses for which SDI could work.

33.     RWP's proposed non-compete/confidentiality agreement, therefore, is not "suitable" as required by the LOI.

34.     Because RWP's proposed non-compete/confidentiality agreement was not suitable and RWP refused to negotiate a "suitable" agreement, SDI refused to execute a non-compete/confidentiality agreement with RWP.

35.     After refusing to negotiate a suitable non-compete/confidentiality agreement, RWP terminated all negotiations with SDI, claiming that SDI had acted improperly and threatening to sue SDI for its alleged breaches of the LOI.

36.     By making these unreasonable and improper demands, RWP successfully escaped from its obligations under the LOI without having to incur any additional expense.

37.     SDI, however, was gravely damaged by RWP's bad faith actions to escape its LOI obligations.

38.     By the time RWP terminated negotiations in December of 2006, SDI had incurred costs in excess of $490,000, lost hundreds of man hours, and gave up numerous other

opportunities arising from its inability to use its equipment that it relocated to Wyoming for the Project.

## COUNT I
### (Declaratory Judgment Pursuant to 28 U.S.C. §2201(a))

39.     Paragraphs 1-38 are hereby incorporated by reference.

40.     In March of 2006, SDI and RWP entered into an enforceable Letter of Intent contract in which RWP agreed to engage in good faith negotiations with SDI to create a mutually agreeable construction Contract within twelve months.

41.     Under the LOI, the parties agreed that the proposed unit costs of the Contract were to be based on SDI's work at Greybull.  The parties also agreed that SDI would sign a "suitable" non-compete/confidentiality agreement.

42.     In direct contradiction of the LOI, RWP refused to allow SDI to perform the work at Greybull and hired alternative contractors instead.

43.     RWP also presented SDI with an unsuitable non-compete/confidentiality agreement – contrary to what the LOI required – and demanded that SDI sign it.

44.     After SDI sought to negotiate an alternative, suitable non-compete/confidentiality agreement, RWP terminated negotiations with SDI despite their agreement to negotiate in good faith until a mutually agreeable Contract was reached and regardless of SDI's good faith efforts to present RWP with an appropriate proposal based on the only data available at that time.

45.     Upon information and belief, after RWP received SDI's estimate of its work at Greybull, RWP lost interest in ever forming a Contract with SDI and began planning its exit from its obligations under the LOI, a goal that it achieved through its bad faith conduct.

46.     An actual and immediate controversy currently exists between SDI and RWP regarding RWP's bad faith actions in its negotiations with SDI and its threat to pursue legal recourse against SDI.

47.     Declaratory relief will serve a useful purpose in clarifying and settling the legal relations at issue, along with terminating and affording relief from the uncertainty, insecurity, and controversy giving rise to the dispute between SDI and RWP.

48.     SDI therefore brings this request for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201.

WHEREFORE, SDI respectfully requests the entry of judgment in its favor and against RWP declaring as follows: (i) SDI acted in good faith in negotiating with RWP to create a mutually agreeable Contract; (ii) RWP acted in bad faith when it breached the LOI by hiring a third party to perform the work at Greybull; (iii) RWP's bad faith actions prevent RWP from applying the LOI's Limitations of Remedies provision, thereby allowing SDI to recover damages from RWP; and (IV) such other relief as is just and appropriate under the circumstances.

## COUNT II
## (Breach of Contract)

49.     Paragraphs 1-38 are hereby incorporated by reference.

50.     Under the LOI, RWP had both a contractual and implied duty to use "diligent efforts" and to "negotiate in good faith" to create a mutually agreeable Contract.

51.     RWP breached its duty to SDI in all of the following ways:

    (a)     By refusing to allow SDI to perform the work at Greybull despite the provision in the LOI specifying that SDI's proposal would be based on its work there, and hiring alternative contractors to perform the work instead;

    (b)     By demanding that SDI sign an unsuitable non-compete/confidentiality agreement that sought to improve its own position by controlling the

business for which SDI could perform work; and

(c)     By unlawfully refusing to deal with SDI and terminating negotiations after SDI had gone to great lengths and expense to fulfill its obligations under the LOI.

52.     RWP's breaches of the LOI were conducted in bad faith to prevent the parties from reaching a mutually agreeable Contract as required under the LOI.

53.     SDI has continuously and consistently engaged in good faith negotiations with RWP.

54.     As a direct and proximate result of RWP's bad faith actions and breaches of the LOI, SDI has incurred significant losses in man hours and money spent on attempting to bring both the Greybull and Poison Spider Field projects to fruition as well as numerous opportunities lost arising from its inability to use its equipment that it relocated to Wyoming for the Poison Spider Field project.

55.     SDI has also suffered incidental damages as a result of RWP's bad faith in addition to legal fees and related costs.

56.     RWP's bad faith actions in relation to the LOI preclude it from relying on the LOI's Limitations of Remedies clause.

WHEREFORE, Plaintiff SDI respectfully requests that this Court enter judgment in its favor and against Defendant RWP, and award SDI monetary damages in excess of the jurisdictionally required amount, plus interest, reasonable attorneys' fees, cost of suit, and other such further relief as the Court deems just and proper.

Dated:  July 19, 2007

Respectfully submitted,


By: _Michelle Widmer-Eby_____
Michelle Widmer-Eby
WV State Bar No. 4034

Widmer-Eby & Associates
211 New Jersey Avenue
Morgantown, WV  26501
(304) 296-1843

Attorney for Plaintiff,
SHAFT DRILLERS INTERNATIONAL,
LLC